WILLIAM TAFF *v.* JAYMA BETTCHER
(SC 15683)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued November 5—officially released December 16, 1997

*James D. Hirschfield*, for the appellant (defendant).

*Everett E. Newton*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly dismissed for lack of a final judgment the defendant's appeal from the trial

court order precluding the parties to this underlying custody action from filing any motions regarding custody or visitation "for a period not less than one year." The pertinent facts in this case are simple and undisputed. William Chandler Taff (Chandler) was born out of wedlock on March 20, 1991, to the plaintiff father, William Taff, and the defendant mother, Jayma Bettcher. On March 26, 1992, the plaintiff, claiming that the defendant was an unfit mother, brought an action seeking custody of Chandler. The defendant filed a cross complaint seeking sole custody and support.

The trial court, *Gill, J.*, essentially heard the custody dispute twice: the first time was in the summer of 1993, when ten witnesses testified, including a child care provider, a psychiatrist, two psychologists and the parties themselves, and the second time was in the summer of 1994, when the court, in an effort "hopefully [to] finalize the custody and visitation issues surrounding young Chandler," heard the testimony of seventeen witnesses, including psychiatrists, a psychologist, family friends, the parties' former spouses and past and present nannies for Chandler. Although the court had continued the case for one year in the hopes that the situation would improve and that the defendant would modify her behavior for the benefit of her son, the court ultimately concluded that "[f]irst, Chandler . . . needs closure on those issues of custody and visitation. Second, [the] defendant mother should have a reduced role in Chandler's life which will provide some closure with more stability, and less negativism." Accordingly, on July 29, 1994, the court rendered judgment for the plaintiff awarding him custody of Chandler, with specific supervised visitation rights to the defendant. Additionally, the court entered ancillary orders pertaining largely to Chandler's nanny.

In 1995, the plaintiff moved to modify the court's orders regarding payment of the nanny and the defendant's visitation schedule, and the attorney for the

minor child moved for payment of counsel fees and to modify her court-ordered responsibilities. Thereafter, in 1996, the defendant moved for modification of visitation, and also filed a motion once again seeking custody. These six motions were heard by the trial court, *Kline, J.*, who, before all of the evidence had been presented, unfortunately died. The defendant requested a transcript of the partial proceedings to allow the case to be concluded before another judge. On October 1, 1996, rather than allow the parties to continue, the trial court, *Dranginis, J.*, instead, ordered the parties to engage in conflict mediation and precluded them from filing any further motions regarding custody or visitation "for a period not less than one year." The court also scheduled a hearing with regard to the financial issues for November 7 and 8, 1996.

The defendant appealed from the orders precluding further filing and requiring conflict mediation. In addition, she moved for a stay of the hearing on the financial issues until after the appeal could be resolved, and she requested that the trial court recuse itself on the ground of bias. Following the trial court's denial of the defendant's motions for a stay and for recusal, the defendant amended her appeal to include review of those rulings. Thereafter, the Appellate Court, suo moto, dismissed the defendant's appeal for lack of a final judgment, and this court granted her petition for certification, limited to the following issue: "Did the Appellate Court properly dismiss this appeal for lack of a final judgment?" *Taff* v. *Bettcher*, 241 Conn. 904, 694 A.2d 41 (1997).[1] Because

---

[1] The plaintiff opposed the defendant's petition for certification, and filed a brief in this court asking that the judgment of the Appellate Court be affirmed. At oral argument before this court, however, the plaintiff, who indicated that he had benefited to some degree by not having to respond to the defendant's barrage of motions during the yearlong period in which no such motions could be filed, represented through counsel that he "specifically has no interest in the outcome of the case" because "whether this matter goes back to the Appellate Court or directly back to the trial court does not affect his rights one way or the other." Counsel for the minor child

we conclude that the trial court order precluding the
parties from bringing any further motions regarding
custody or visitation constituted an appealable final
judgment, we reverse the judgment of dismissal of the
Appellate Court.[2] Additionally, we retain jurisdiction
over the appeal in this court and impose additional
orders on the trial court and the parties in the interest
of expediting this case.[3]

We begin with established jurisdictional principles
that guide, and indeed control, whether an order is

agreed with the defendant in this case and urged the court to reverse the
judgment of the Appellate Court.

[2] Our decision to reverse the judgment of the Appellate Court pertains to
the trial court order precluding the parties from filing any further motions
regarding custody and visitation. The parties have not briefed the issue of
whether the two additional orders that formed the basis of the defendant's
amended appeal, i.e., the denial of the defendant's motion to stay the proceed-
ings in connection with the financial orders and the denial of the defendant's
motion for Judge Dranginis to disqualify herself, are final judgments for
purposes of appeal. The issues of finance and custody, however, are inextri-
cably intertwined with one another. As we have stated, orders relating to
custody and support are part of a carefully crafted mosaic such that a change
to one will necessarily create a change to the other. See *Sunbury* v. *Sunbury*,
210 Conn. 170, 174–75, 553 A.2d 612 (1989); *Wolf* v. *Wolf*, 39 Conn. App. 162,
174–75, 664 A.2d 315 (1995). Although the denial of the defendant's motion
to disqualify is not, in and of itself, a final judgment; *Burger & Burger, Inc.*
v. *Murren*, 202 Conn. 660, 667, 522 A.2d 812 (1987); it would serve no
reasonable purpose to separate it from the other two issues, and, indeed,
would only serve unnecessarily to protract the proceedings, a consequence
we clearly seek to avoid. See footnote 3 of this opinion.

[3] The trial court order prohibiting the parties from bringing any motions
regarding custody and visitation expired on October 1, 1997, leaving the
parties free to seek further redress from the court as of that date. The appeal
from the order would, therefore, now be considered moot unless it were
to qualify for review under the "capable of repetition yet evading review"
exception. See *Loisel* v. *Rowe*, 233 Conn. 370, 396–97, 660 A.2d 323 (1995).
The parties, however, informed the court at oral argument that the trial
court, *Walsh, J.*, has continued the orders that are the subject of the underly-
ing appeal until this court decides whether the Appellate Court properly
dismissed the defendant's appeal. As the parties must continue to refrain
from seeking any redress from the court regarding custody and visitation
of Chandler, and the clerk's office must continue to reject any motions
pertaining to such issues, the appeal is not moot. We note that the trial

appealable. Appellate jurisdiction is limited, with few statutory exceptions not pertinent to this case, to appeals from final judgments. See General Statutes §§ 51-197a, 51-199 and 52-263; see also Practice Book § 4000. Consequently, interlocutory appeals must be dismissed. The difficulty comes not with the rule, but, rather, with its application. To help evaluate whether an otherwise interlocutory order is nonetheless final for purposes of appeal, we have in recent years relied on the standard set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), which permits the immediate appealability of an order "in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them."

It is clear that had the trial court ruled on the merits with regard to any of the motions first heard by Judge Kline, any such decision would have been appealable. See General Statutes §§ 46b-56 and 46b-86; *Borkowski* v. *Borkowski*, 228 Conn. 729, 734–40, 638 A.2d 1060 (1994). The issue in this case, however, is not whether a decision on any of those motions is a final judgment, but, rather, whether the order denying the parties access to the court and precluding them from filing any motions pertaining to custody and visitation of their son for a period of not less than one year constitutes an appealable final judgment.[4]

court has ordered an updated family relations study that necessarily made some adjustments to the visitation schedule to allow that study to be conducted.

[4] Whether the trial court's order was, in effect, tantamount to a refusal to rule on any of the pending motions that pertained to custody and visitation or a denial of them is an issue that has not been briefed as part of this certified appeal. Therefore, we decide in this appeal only whether an order precluding the parties from "filing any further motions for modification and/or order addressed to issues of custody or visitation" is a final judgment for purposes of appeal.

Although this is an issue of first impression, we have in a closely related context recognized the importance of the relationship shared between parent and child and how certain orders affecting that relationship so impact the rights of the parties as to require immediate review. Applying the second *Curcio* standard and its antecedents, in *Madigan* v. *Madigan*, 224 Conn. 749, 754–55, 620 A.2d 1276 (1993), we concluded that "a temporary order of custody is a final judgment for the purpose of an immediate appeal because a parent's custodial rights during the course of dissolution proceedings cannot otherwise be vindicated at any time, in any forum." We recognized that temporary custody orders affect the irreplaceable time and relationship shared between a parent and a child and can have irreparable consequences for the parent-child relationship. "A lost opportunity to spend significant time with one's child cannot be replaced by a subsequent order of custody as part of an ultimate dissolution judgment. . . . To deny immediate relief to an aggrieved parent interferes with the parent's custodial right over a significant period in a manner that cannot be redressed by a later appeal." Id., 756. On balance, we were more persuaded by the rationale for allowing an immediate appeal of the temporary custody order than by the traditional reasons of judicial economy that might otherwise have precluded its review. Accordingly, we held that an immediate appeal of a temporary custody order is the "only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected." Id., 757.

The considerations that informed our decision in *Madigan* apply equally to the facts of this case. Just as a temporary custody order may have a significant impact on a subsequent permanent custody decision, a court order barring the parties for one year from seeking review on the issues of custody and visitation

may interfere with a parent's custodial rights over a significant period in a manner that cannot be redressed at a later time. A lost opportunity to spend significant time with one's child is not recoverable. See id., 756. Any chance by the noncustodial parent to restructure custody and visitation to enhance the relationship or further establish a foundation in that interval cannot be replaced by a subsequent modification one year later. Nor can any harm to the child caused by the custodial arrangement be meaningfully addressed one year after it occurs. We are persuaded that, as in the case of a temporary order of custody, an immediate appeal of the court order in this case is "the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected." Id., 757. Accordingly, we conclude that the Appellate Court improperly dismissed the defendant's appeal for lack of a final judgment.[5]

By our decision today, we are not expressing an opinion as to the merits of the claims in the defendant's appeal from the trial court order. We recognize that "[t]he power of a domestic relations court to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. *Gallagher* v. *Gallagher*, 11 Conn. App. 509, 513, 528 A.2d 379 (1987), quoting *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 585, 362 A.2d 835 (1975). Decision-making in family cases requires a flexible, individualized adjudication of the particular facts of each case . . . . *Weidenbacher* v. *Duclos*, 234 Conn. 51, 76, 661 A.2d 988 (1995), quoting *Seymour* v. *Seymour*, 180 Conn. 705, 710, 433 A.2d 1005 (1980)." (Internal quotation marks omitted.) *Meehan* v.

---

[5] Because we determine that the order in this case is a final judgment on the basis of its effect on the rights of the parties, we need not decide whether it would merit immediate appeal under the *Curcio* test, as a "separate and distinct proceeding . . . ." *State* v. *Curcio*, supra, 191 Conn. 31.

*Meehan,* 40 Conn. App. 107, 112–13, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142 (1996). In this case, the trial court was presented with an increasingly hostile situation and used its powers of equity to fashion relief for the parties. Whether the trial court exercised those powers properly is not part of the certified question, but, rather, is the issue in the underlying appeal, which is not currently before the court.

Although we conclude that the Appellate Court improperly dismissed the appeal and would normally remand the case to that court to decide the issues in the defendant's underlying appeal, in the interest of expediting this case for the benefit of the minor child, whose custody and visitation have been the subject of court proceedings for nearly his entire life, we will retain jurisdiction of the case for the purposes of appellate review of those issues. To enable this court to decide the case, however, certain steps must be taken.

We begin with the trial court. If "necessary to the proper disposition of the cause," we may remand the case to the trial court for a clarification or explication of its decision. Practice Book § 4061; see, e.g., *State* v. *Patterson,* 227 Conn. 448, 454–55, 629 A.2d 1133 (1993); *State* v. *Pollitt,* 199 Conn. 399, 416–17, 508 A.2d 1 (1986); *State* v. *Cobbs,* 198 Conn. 638, 643, 504 A.2d 513 (1986); *State* v. *Lafferty,* 189 Conn. 360, 363, 456 A.2d 272 (1983); *State* v. *Ostroski,* 184 Conn. 455, 460–61, 440 A.2d 166 (1981). We conclude that a remand to Judge Dranginis for an articulation of the reasons for her order precluding the parties from filing any motions regarding custody or visitation for at least one year is appropriate in this case. In the absence of a further explanation by the court setting forth the basis for its decision, we would review the record to ascertain the facts upon which the court's decision may have been based. The trial court's order is sparse, however, reflecting only that the parties, through counsel, had attended a status

conference with respect to the motions still pending at the time of Judge Kline's untimely death. In view of the crucial importance of the court's fact-finding with respect to the issues in the underlying appeal, an articulation by the court of the facts upon which its order was based will substantially assist us in resolving the defendant's claims. That articulation should at least reflect the trial court's findings with regard to the need for the order.

We further conclude that an articulation from Judge Walsh of his reasons for continuing that order is warranted. Although the parties represented that he continued the order pending a determination by this court of the propriety of the Appellate Court's dismissal of the appeal, there is no record explaining the basis for that decision or its scope.

With regard to the parties, they are instructed to prepare and supplement the record in an appropriate fashion. They are further instructed to comply with a briefing schedule to be set by this court following the trial court's articulations. Finally, in the event that Judge Walsh determines that there is no longer any need to further continue the order, the parties may agree to have the case assigned to another judge for determination of the outstanding motions rather than return to this court to argue why the appeal is not moot; see footnote 3 of this opinion; and, if necessary, to address its merits.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings in accordance with this opinion. We, however, retain jurisdiction over the case in order to resolve, if necessary, the claims in the underlying appeal.

In this opinion the other justices concurred.