DALE M. SWEENEY *v.* DENNIS R. SWEENEY
(SC 16978)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued March 8—officially released September 21, 2004

*Laura-Ann Simmons,* with whom was *Anthony A. Piazza,* for the appellant (defendant).

*Kevin F. Collins,* for the appellee (plaintiff).

*Mark H. Henderson,* for the minor child.

*Opinion*

NORCOTT, J. The defendant, Dennis R. Sweeney, appeals, following our grant of certification,[1] from the judgment of the Appellate Court dismissing his appeal, for lack of a final judgment, from the trial court's pendente lite order granting the plaintiff, Dale M. Sweeney, permission to enroll the parties' minor child in parochial school. *Sweeney* v. *Sweeney,* 75 Conn. App. 279, 289, 815 A.2d 287 (2003). The defendant claims that the Appellate Court improperly concluded that the trial court's pendente lite order, which was entered in the course of dissolution proceedings and directed that the parties' minor child attend a parochial school over his objection as joint legal custodian, did not constitute an appealable interlocutory order pursuant to the standard articulated in *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983). We agree with the defendant and, accordingly, we reverse the judgment of the Appellate Court.

The following procedural history, as set forth in the opinion of the Appellate Court, is relevant to this appeal. "On November 27, 2001, the plaintiff brought this action for a legal separation from the defendant. The defendant filed a cross complaint for dissolution of the marriage and for sole legal custody of the parties' minor child. The plaintiff responded with an amended complaint

---

[1] We granted the defendant's petition for certification to appeal, limited to the following issue: "Whether the Appellate Court correctly concluded that a pendente lite order entered in a dissolution of marriage action, relating to the religious and educational upbringing of a minor child, was not a final judgment." *Sweeney* v. *Sweeney,* 263 Conn. 915, 821 A.2d 769 (2003).

also seeking dissolution of the marriage and sole legal custody of the minor child." *Sweeney* v. *Sweeney*, supra, 75 Conn. App. 280–81.

During the pendency of the dissolution proceedings, "[t]he [trial] court [entered an order temporarily granting the parties] joint legal custody, [and] the plaintiff [primary physical custody of the minor child]. The child had been baptized in the Roman Catholic faith and was scheduled to commence kindergarten in the 2002–2003 school year. On May 17, 2002, the defendant filed a motion stating that the parties did not agree on whether the child should attend public or parochial school and requesting [a determination as to the school that the minor child would attend] in the fall of 2002. Three weeks later, the plaintiff filed a motion seeking . . . permission to enroll the child in parochial school.

"The plaintiff argued that her motion should be granted because the defendant had . . . participated in the child's baptism ceremony and had agreed on at least two separate occasions to enroll the child in parochial school. The defendant argued that the parties had not agreed to send the child to parochial school, and that the school the plaintiff had selected was small, underfunded, lacked certification and had not provided the parties with information on standardized testing. The defendant further argued that an order permitting the plaintiff to enroll the child in parochial school would be in violation of the first amendment to the United States constitution." (Internal quotation marks omitted.) Id., 281.

On August 6, 2002, the trial court conducted a hearing on these motions and granted the plaintiff permission to enroll the minor child in parochial school. Id. The defendant appealed from this order on August 19, 2002, and also sought to stay the pendente lite order pending the appeal. Id., 282. At a hearing on August 23, 2002,

the trial court expressed its determination that the order was stayed automatically, but granted the plaintiff's oral motion to terminate the stay in order that the minor child could begin classes.

The defendant then moved for review of the trial court's termination of the stay by the Appellate Court. Id. The Appellate Court denied the defendant's motion for review and, sua sponte, placed the defendant's appeal from the trial court's pendente lite order on its own motion calendar. Id. The Appellate Court ordered that the parties appear and provide reasons, if any, as to why the defendant's appeal should not be dismissed for lack of a final judgment. Id.

Thereafter, the Appellate Court dismissed the defendant's appeal for lack of a final judgment. Id., 283. In so doing, the Appellate Court noted that the trial court's pendente lite order did not fall squarely within any of the previously recognized categories of appealable interlocutory orders in family cases. Id., 283–84. As an issue of first impression, the Appellate Court sought guidance from this court's decision in *Madigan* v. *Madigan*, 224 Conn. 749, 620 A.2d 1276 (1993). In *Madigan*, we concluded that a pendente lite order of physical custody, entered during dissolution proceedings, was a final judgment for the purpose of appellate review because such an order affects the "irreplaceable time and relationship shared between parent and child"; id., 755; and that "an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected." Id., 757.

The Appellate Court distinguished *Madigan* because, in its view, the trial court's pendente lite order in the present case impacted parental "authority to make decisions on behalf of the child, not the 'irreplaceable time and relationship shared between parent and child.' "

*Sweeney* v. *Sweeney*, supra, 75 Conn. App. 286. The Appellate Court further voiced its concern that to extend *Madigan* beyond orders of physical custody, and apply it to pendente lite orders impacting the right of a joint legal custodian to make decisions on behalf of a minor child, would " '[open] the floodgates' to a wave of appeals from temporary orders regarding education, religious instruction, medical care and a host of other issues, both trivial and significant, affecting a child's welfare." Id.

The Appellate Court declined, however, "to adopt a bright line rule that would preclude appeals from all temporary orders of legal custody, preferring instead to consider such appeals on a case-by-case basis." Id. In the consideration of the immediate appealability of pendente lite orders, such as the one at issue in this case regarding the religious and educational upbringing of a minor child, the Appellate Court indicated that it found instructive the various justifications announced in *Madigan* as persuasive on the issue of the immediate appealability of orders of physical custody. Id., 287. In *Madigan*, we found persuasive the plaintiff's claims that a pendente lite order of physical custody should be considered a final judgment for purposes of appeal because: (1) such an order carries irreparable consequences in that lost opportunities to spend time with a minor child can never be replaced; (2) such an order typically will interfere with an aggrieved parent's physical interaction with a minor child over a significant period of time, given the lengthy duration of contested custody matters; (3) an aggrieved parent's ability to seek to modify an order of physical custody may not be an adequate substitute for vindication of the aggrieved parent's important rights through an appeal; and (4) the temporary order may have a significant impact on a subsequent permanent custody order. *Madigan* v. *Madigan*, supra, 224 Conn. 756–57.

The Appellate Court concluded that, although the importance of a parent's interest in the care, custody and control of a minor child "cannot be underestimated . . . to the extent the defendant has a joint custodial right to decide whether his child shall attend public or parochial school, he freely relinquished that right when he requested [that] the [trial] court . . . settle the parties' dispute . . . ." *Sweeney* v. *Sweeney*, supra, 75 Conn. App. 288. Moreover, the Appellate Court concluded that the trial court's pendente lite order was focused on a narrow issue, the minor child's educational institution for the fall of 2002, and did not preclude the defendant from participating in future decisions regarding the religious or educational upbringing of his minor child. Id., 288–89. As such, the Appellate Court determined that the trial court's pendente lite order did not exact "irreparable consequences" on the defendant and, therefore, did not satisfy the first consideration recognized in *Madigan*. Id., 287–88. With regard to the remaining factors in *Madigan*, the Appellate Court concluded that: "Because the defendant has not suffered an irreparable loss, any delay in the dissolution proceedings will not subject him to a further deprivation. The argument that an appeal is the best means available to vindicate the loss also is unavailing because no such loss occurred. Finally, it cannot be assumed that the child's enrollment in parochial school for the current school year necessarily will influence the court's future orders regarding the child's education. . . . Moreover, should there be any 'spillover effect,' [on future orders] the defendant may appeal from the court's final orders." (Citations omitted.) Id., 288–89. Having concluded that the trial court's pendente lite order was not a final judgment, the Appellate Court dismissed the defendant's appeal. Id., 289.

On appeal from the judgment of the Appellate Court, the defendant claims that the court improperly dis-

missed his appeal for lack of a final judgment. Specifically, the defendant contends that a pendente lite order regarding the religious and educational upbringing of a minor child is a final judgment for the purpose of appellate review because such an order concludes the right of a joint custodial parent to make decisions regarding the religious and educational instruction of his minor child. The defendant further claims that the Appellate Court improperly concluded that his motion requesting that the trial court settle the parties' dispute regarding the education of his minor child operated as a waiver of his right to direct the religious and educational upbringing of his minor child. We agree with the defendant.[2]

I

We begin with the threshold issue as to whether events occurring since the judgment of the Appellate Court have rendered this appeal moot.[3] The defendant concedes that his appeal is now moot because the trial court's pendente lite order has been superseded by a final judgment of dissolution of the parties' marriage, but he nevertheless urges that we consider the merits of the question presented in the present appeal because it is capable of repetition yet evading review. See *Tappin* v. *Homecomings Financial Network, Inc.*, 265

---

[2] We acknowledge the brief filed by the counsel appointed to represent the parties' minor child during the dissolution proceedings. The brief contends that the trial court's pendente lite order was a final judgment for the purpose of appellate review because an immediate appeal from such an order is the only way to vindicate a parent's important right to participate in his or her child's religious and educational upbringing, and that a final determination as to this issue would be in the best interests of the minor child.

[3] The plaintiff did not file a brief with this court regarding this appeal. In correspondence to the appellate clerk, the plaintiff expressed her position that this appeal is now moot because there has been a final judgment of dissolution, which superseded the pendente lite order that underlies this appeal, and the parties have come to an agreement as to the educational instruction of their minor child for the immediate future.

Conn. 741, 746, 830 A.2d 711 (2003) (reaching merits of claim on appeal because, despite intervening events having rendered claim moot, question presented was capable of repetition yet evading review and, therefore, exception to general rule that appellate court lacks subject matter jurisdiction over claim when no practical relief may result from decision). We agree with the defendant.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction . . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125–26, 836 A.2d 414 (2003). On October 29, 2003, following our grant of certification and the filing of briefs to this court, the trial court rendered a final judgment of dissolution of the parties' marriage. "Pendente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because their purpose is extinguished at that time." *Connolly* v. *Connolly*, 191 Conn. 468, 480, 464 A.2d 837 (1983); accord *Ford* v. *Ford*, 68 Conn. App. 173, 181 n.3, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002). Because this court can render no practical relief from a pendente lite order that is no longer in effect, the defendant's appeal is moot.

This does not end our analysis, however, because "an otherwise moot question may qualify for review under the capable of repetition, yet evading review exception [to the mootness doctrine]. To do so, however, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by

its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754–55, 826 A.2d 156 (2003). We conclude that the present case meets all three requirements and is therefore capable of repetition, yet evading review.

First, as noted, the nature of a pendente lite order, entered in the course of dissolution proceedings, is such that its duration is inherently limited because, once the final judgment of dissolution is rendered, the order ceases to exist. *Connolly* v. *Connolly*, supra, 191 Conn. 480. Although we recognize that dissolution proceedings may vary as to their relative length, there is a strong likelihood that, as compared to the time necessary to conclude appellate litigation, a substantial majority of cases raising a challenge to a pendente lite order entered in the course of dissolution proceedings will become moot prior to final appellate resolution. See *Goodson* v. *State*, 228 Conn. 106, 116, 635 A.2d 285 (1993) (concluding that pendente lite order in arbitration proceeding is apt to evade review in part because of its intrinsically limited life span), on appeal after remand, 232 Conn. 175, 653 A.2d 177 (1995). Buttressing this conclusion, the record in the present case reveals that this dissolution action was litigated vigorously by both parties, resulting in a span of twenty-three months between the commencement of the action and the final

judgment of dissolution; such a time frame demonstrates the unlikelihood that appellate resolution regarding a pendente lite order entered during the course of such proceedings could be achieved before the order is superseded. See *In re Steven M.*, supra, 264 Conn. 755–56 (concluding that transfer orders regarding commitment of juvenile delinquents with potential effective period of up to eighteen months was of such limited duration that substantial majority of cases in which such orders are entered will evade review).

Moreover, it is virtually certain that the *effect* of this type of pendente lite order is of such limited duration that the question inevitably will evade review. Here, the essence of the defendant's claim is that a parent sharing legal custody of his minor child has a right to have his child enrolled in an educational institution that he finds acceptable, and a right to direct the upbringing of his child in such a way so as to avoid, or minimize, his child's exposure to religious influences. Given the nature of this claim, the effect that the trial court's pendente lite order has on the defendant's right as joint legal custodian occurs on the first day on which the minor child attends an educational institution that the defendant believes to be unacceptable and is exposed to religious influences that the defendant wishes to avoid. Because the school calendar for minor children encompasses much of the calendar year and, given legislative requirements regarding mandatory school attendance; see General Statutes § 10-184;[4] it is unlikely that

---

[1] General Statutes § 10-184 provides in relevant part: "All parents and those who have the care of children shall . . . instruct them or cause them to be instructed in reading, writing, spelling, English grammar, geography, arithmetic and United States history and in citizenship, including a study of the town, state and federal governments. Subject to the provisions of this section and section 10-15c, each parent or other person having control of a child five years of age and over and under eighteen years of age shall cause such child to attend a public school regularly during the hours and terms the public school in the district in which such child resides is in session, unless such child is a high school graduate or the parent or person having control of such child is able to show that the child is elsewhere

a trial court would be willing to stay a pendente lite order regarding education. There is, therefore, an exceedingly narrow time frame within which an aggrieved parent in the defendant's position could vindicate his rights before the effect he wishes to avoid becomes a moot point.[5] See *Stamford Hospital* v. *Vega*, 236 Conn. 646, 653–55, 674 A.2d 821 (1996) (concluding that issuance of injunction permitting administration of medically necessary, but nonconsensual, blood transfusion was capable of repetition, yet evading review in part because such transfusions will take place soon after order is issued and because it is unlikely that trial court will stay such order).[6]

---

receiving equivalent instruction in the studies taught in the public schools. The parent or person having control of a child sixteen or seventeen years of age may consent, as provided in this section, to such child's withdrawal from school. Such parent or person shall personally appear at the school district office and sign a withdrawal form. The school district shall provide such parent or person with information on the educational options available in the school system and in the community. The parent or person having control of a child five years of age shall have the option of not sending the child to school until the child is six years of age and the parent or person having control of a child six years of age shall have the option of not sending the child to school until the child is seven years of age. The parent or person shall exercise such option by personally appearing at the school district office and signing an option form. The school district shall provide the parent or person with information on the educational opportunities available in the school system."

[5] The facts of this case demonstrate this point rather well. The parties filed their respective motions regarding their child's educational institution in May and June, 2002. The trial court conducted a hearing regarding these motions on August 6, 2002, and at that time ordered the minor child enrolled in the plaintiff's chosen parochial school. The defendant appealed from this order thirteen days later, on August 19, 2002. The record further reveals that the minor child was scheduled to begin classes at the parochial school on August 28, 2002. In this matter, therefore, the period of time between the trial court's pendente lite order, and the date on which the order would impact the defendant's rights by virtue of the attendance of his minor child at the parochial school, was a mere twenty-two days.

[6] The dissent disagrees with our conclusion that this matter meets the first requirement of the capable of repetition, yet evading review exception because "the challenged action, or the effect of the challenged action, by its very nature [is] of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded." *In re Steven*

## Second, there exists a reasonable likelihood that the question presented in this case will recur in the future

*M.*, supra, 264 Conn. 755. In the dissent's view, the protracted nature of hotly contested litigation involving the custody of children militates against the notion that a substantial number of cases raising the particular challenge made here by the defendant will become moot prior to the conclusion of appellate proceedings.

The dissent dismisses the fact that the record in this matter lends support to our conclusion that a substantial number of challenges to pendente lite orders regarding the religious and educational upbringing of a minor child will have been superseded by a final judgment of dissolution, and thereby will have become moot, prior to the conclusion of appellate proceedings. The dissent fails to consider, however, that this matter itself involved protracted litigation that places it at a point on the durational spectrum reserved for the lengthiest and most contentious of dissolution proceedings. In fact, the nature of this litigation led the trial court to remark at one point, "[t]his record should expressly indicate that there is no parenting ability, in the absence of a gatekeeper for [the plaintiff and defendant] to even agree on whether the sun has risen on any particular day." Contrary to the dissent's position that protracted litigation involving issues of child custody likely will not become moot before appellate resolution can be achieved, this matter, spanning a total of twenty-three months and becoming moot prior to oral argument before this court, confirms that there is a strong likelihood that a substantial majority of even the most protracted dissolution proceedings will become moot prior to appellate resolution.

In support of its position that challenges such as this defendant's will not become moot prior to final appellate resolution, the dissent relies upon *Madigan* v. *Madigan*, 224 Conn. 749, 620 A.2d 1276 (1993). Although the dissent is correct in stating that, in *Madigan*, the pendente lite order at issue had not been superseded by a final judgment of dissolution prior to this court's decision, the dissent fails to recognize that, on remand from this court's decision, the Appellate Court dismissed the plaintiff's appeal as moot because the pendente lite order at issue had been modified by a subsequent temporary order of physical custody. *Madigan* v. *Madigan*, 33 Conn. App. 229, 231–32, 635 A.2d 303 (1993). In *Madigan*, therefore, the challenge to the pendente lite order became moot prior to appellate resolution of the merits of the challenge to the order. This procedural history confirms our determination that there is a strong likelihood that the substantial majority of challenges to pendente lite orders, such as the defendant's challenge here and the plaintiff's challenge in *Madigan*, will become moot before appellate litigation can be concluded.

Finally, the dissent does not address the virtual certainty that the *effect* of this type of pendente lite order is of such limited duration that the question inevitably will evade review. As discussed, given the nature of the school calendar year and the unlikelihood that a trial court would issue a stay of a pendente lite order regarding a minor child's educational institution, if an aggrieved parent in the defendant's position wishes to avoid entirely the minor child's exposure to religious influences or to an inferior academic setting, it is hard to conceive of a scenario in which a challenge to such an

and will affect, either the defendant once again, or a reasonably identifiable group for whom the defendant may be considered a proper surrogate. At oral argument before this court, counsel for the defendant indicated that the parties had reached an agreement that their minor child would be enrolled in a public school for the period of one year. Notwithstanding this agreement, the defendant's counsel indicated that the issue as to where the minor child would be enrolled following the year in public school remains a source of contention between the parties.[7] Accordingly, it is reasonably likely that the same question presented in this appeal will arise again between these parties.

In addition to the probable recurrence of this question as between *these* parties, it is reasonably likely that joint legal custodians of other minor children will disagree as to this same question of religious and educational instruction and will seek judicial resolution from the trial court on a pendente lite basis. The defendant in this appeal is situated similarly to the potential members of this reasonably identifiable group of aggrieved custodians, and he properly may be considered to act as a surrogate for their concerns and interests.

Third, the question presented in this case is of public importance. We have "acknowledge[d] the status of parents' interest in the care, custody and control of their children, as perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court. *Troxel* v. *Granville*, [530 U.S. 57, 65,

order may be resolved through appellate proceedings prior to that exposure taking place.

[7] Counsel for the defendant stated at oral argument before this court that the parties had entered into the agreement regarding the educational enrollment of the minor child for one year because the question of schooling had been the sole issue outstanding in the dissolution proceedings, and the parties had been desirous of concluding the proceedings expeditiously rather than prolonging the dissolution proceedings over one issue.

120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)]. . . . [Moreover] [t]he essence of parenthood is the companionship of the child and the right to make decisions regarding his or her care, control, education, health, religion and association. *Pierce* v. *Society of Sisters*, 268 U.S. 510, 534–35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer* v. *Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) . . . ." (Citations omitted; internal quotation marks omitted.) *Roth* v. *Weston*, 259 Conn. 202, 216–17, 789 A.2d 431 (2002). The trial court's pendente lite order directly implicates the substantial interests of the defendant, and all joint legal custodians similarly situated, in charting the course of a minor child's religious and educational development. The question presented in this appeal, therefore, is capable of repetition, yet evading review.

## II

We next turn to a consideration of the defendant's claim that the Appellate Court improperly concluded that the trial court's pendente lite order, related to the religious and educational upbringing of his minor child, was not a final judgment. We conclude that the trial court's pendente lite order so concluded the implicated rights of the defendant such that further proceedings could not affect them, and, accordingly, the order constituted a final judgment pursuant to *State* v. *Curcio*, supra, 191 Conn. 31.

We set forth the standard of review that governs our resolution of this issue. The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. "A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, supra, 265 Conn. 750. It is a well established "jurisdictional [principle] that . . .

[a]ppellate jurisdiction is limited, with few statutory exceptions not pertinent to this case, to appeals from final judgments. . . . Consequently, interlocutory appeals must be dismissed. The difficulty comes not with the rule, but, rather, with its application. To help evaluate whether an otherwise interlocutory order is nonetheless final for purposes of appeal, we have in recent years relied on the standard set forth in *State v. Curcio*, [supra, 191 Conn. 31], which permits the immediate appealability of an order 'in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them.' " (Citations omitted.) *Taff* v. *Bettcher*, 243 Conn. 380, 384–85, 703 A.2d 759 (1997).

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the part[y] seeking to appeal to establish 'that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal.' " *Shay* v. *Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000). "[T]he [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that [the trial court's] decision threatens to abrogate a right that he or she *then* holds." (Emphasis in original; internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, supra, 265 Conn. 752.

We have in the past concluded that, within the context of family matters, a number of otherwise interlocutory orders constitute final judgments for the purpose of appellate review because such orders so substantially resolve the rights of the parties that further proceedings cannot affect them. See *Taff* v. *Bettcher*, supra, 243 Conn. 386–87 (judicially imposed one year ban on cus-

tody and visitation motions to prevent parents involved
in custody dispute from further filings was final judg-
ment); *Madigan* v. *Madigan*, 224 Conn. 749, 756–58,
620 A.2d 1276 (1993) (order of temporary physical cus-
tody was final judgment for purposes of appeal); *Lit-
vaitis* v. *Litvaitis*, 162 Conn. 540, 548, 295 A.2d 519
(1972) (temporary order of child support in dissolution
action was final judgment); *Hiss* v. *Hiss*, 135 Conn. 333,
336, 64 A.2d 173 (1949) (pendente lite order of support
in equitable action for support was final judgment).
Connectedly, we have confirmed that a temporary order
of physical custody is a final judgment for purposes of
appellate review, holding that an attempt by a parent
to delay a challenge to the temporary order until *after*
termination of parental rights will be dismissed as a
collateral attack on the temporary order and a procedur-
ally impermissible substitute for immediate appeal. *In
re Shamika F.*, 256 Conn. 383, 403–408, 773 A.2d 347
(2001).

Although the precise question presented in this case
is an issue of first impression, the considerations that
guided our decisions in these cases apply similarly to
the facts of this case. Taken collectively, these cases
demonstrate that, given the nature of the interests at
stake in cases such as this, "[o]n balance, we [have
been] more persuaded by the rationale for allowing an
immediate appeal of . . . temporary . . . order[s] [in
family matters] than by the traditional reasons of judi-
cial economy that might otherwise have precluded
[their] review." *Taff* v. *Bettcher*, supra, 243 Conn. 386.
For example, in *Madigan* v. *Madigan*, supra, 224 Conn.
755, we concluded that a temporary order of physical
custody was to be considered a final judgment because
such an order "affect[s] the irreplaceable time and rela-
tionship shared between parent and child," and that
"an immediate appeal is the only reasonable method
of ensuring that the important rights surrounding the

parent-child relationship are adequately protected."
Id., 757.

Likewise, in *Taff* v. *Bettcher*, supra, 243 Conn. 387, we concluded that a trial court's order barring the parties to a custody action from further custody or visitation motions for one year was a final judgment because such an order "may interfere with a parent's custodial rights over a significant period in a manner that cannot be redressed at a later time. A lost opportunity to spend significant time with one's child is not recoverable. . . . Any chance by the noncustodial parent to restructure custody and visitation to enhance the relationship or further establish a foundation in that interval cannot be replaced by a subsequent modification one year later. Nor can any harm to the child caused by the custodial arrangement be meaningfully addressed one year after it occurs." (Citation omitted.)

In the present case, the interest asserted by the defendant, namely, the right of a parent to direct the upbringing and religious or educational instruction of his child, is ranked as among the most fundamental, and compelling, interests that inhere in an individual having the status of parent. See *Wisconsin* v. *Yoder*, 406 U.S. 205, 232, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *Pierce* v. *Society of Sisters*, supra, 268 U.S. 534–35 (recognizing interest of parents and guardians in directing "the upbringing and education of children under their control"); *Meyer* v. *Nebraska*, supra, 262 U.S. 400 (acknowledging parents' "right of control" over education of their children). Concluding that a pendente lite order directly impacting this important parental right is a final judgment for the purpose of appellate review is the

only reasonable method of ensuring that the right is protected adequately.

Although the pendente lite order underlying this appeal does not pertain to the same type of temporary orders of physical custody that were involved in *Madigan* and *Taff*, the same principles and considerations are present. The consequences of the enrollment of a minor child in an educational institution that a joint legal custodian believes to be academically inadequate and religiously objectionable are irreparable. The lost opportunity to have a child exposed only to academic and religious influences sanctioned by a joint legal custodian cannot be replaced by any subsequent court order. Moreover, such a pendente lite order may impact this parental right over a significant period of time, with the harm to the parental interest increasing exponentially as the minor child spends more time in the educational institution at issue. Subsequent attempts by an aggrieved parent to modify such a pendente lite order also may not be an adequate substitute for vindication of the parent's rights through an appeal. Finally, a pendente lite order such as this may result in a spillover effect with regard to subsequent decisions related to the enrollment of the minor child. Charged with the determination as to what is in the best interests of the minor child, the trial court may later be reluctant to create a degree of instability in the daily life of the minor child, and adversely impact personal bonds created with teachers and classmates, by ordering the transfer of the minor child to another educational institution.

The Appellate Court distinguished the present case from *Madigan* on the ground that *Madigan* dealt with a pendente lite order of physical custody, while this case dealt with a "parent's authority to make decisions on behalf of [a] child . . . ." *Sweeney* v. *Sweeney*, supra, 75 Conn. App. 286. This is a distinction without

a difference. A parent's custodial interest in directing the religious and educational upbringing of his minor child is as compelling as a parent's interest in physical interaction with his minor child. Furthermore, we are not persuaded by the Appellate Court's rationale that the defendant, having filed a motion seeking the trial court's determination as to the educational institution in which his minor child would be enrolled, waived his right to direct the upbringing of his minor child in this regard. Id., 288. The defendant, in his own motion and in opposition to the plaintiff's motion, consistently claimed that he did not wish his minor child to be enrolled in parochial school. The defendant, having sought an order of the trial court in conformity with this position, did not waive any rights if the trial court concluded otherwise.

With regard to the Appellate Court's concern that, if pendente lite orders impacting a joint legal custodian's right to direct the religious and educational upbringing of a minor child are found to constitute final judgments for the purpose of appellate review, we will be overwhelmed by a sudden influx of appeals; id., 286; we are not persuaded. An identical concern was raised in *Madigan* v. *Madigan*, supra, 224 Conn. 758, and was rejected by this court. In *Madigan*, we indicated that we did not anticipate a deluge of appeals from temporary orders of physical custody once they were held to be appealable final judgments and, for those appeals that did arise, the impact on underlying dissolution proceedings would be minimal as the standard of review in such an appeal "remains abuse of discretion . . . and our appellate decisions emphasize that an abuse of discretion leading to reversal is rare." (Citation omitted.) Id. Since *Madigan*, we have not been inundated with appeals from pendente lite orders of physical custody, and we do not anticipate a different outcome regarding

appeals from pendente lite orders related to the religious and educational upbringing of minor children.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the merits of the defendant's claims on appeal.

In this opinion BORDEN and KATZ, Js., concurred.

ZARELLA, J., with whom SULLIVAN, C. J., joins, dissenting. The majority in the present case first concludes that, "[b]ecause this court can render no practical relief from a pendente lite order that is no longer in effect, the defendant's appeal is moot." The majority goes on to conclude, however, that this case falls within the capable of repetition yet evading review exception to the mootness doctrine. I disagree with that conclusion and, accordingly, respectfully dissent from the majority opinion.[1]

The sole issue in this certified appeal is whether the Appellate Court properly concluded that a pendente lite order relating to the religious and educational upbringing of the parties' minor child was not a final judgment. See *Sweeney* v. *Sweeney*, 263 Conn. 915, 821 A.2d 769 (2003). The majority properly concludes that, prior to reaching the merits of the defendant's appeal, this court must address whether it has jurisdiction to hear the appeal in light of the fact that a final dissolution order was entered pending the appeal. In addition, I agree with the majority that, because " '[p]endente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered,' " the present case is moot.

The majority nevertheless concludes that, although this appeal is rendered moot by virtue of the superseding final dissolution order, it falls within the capable of repetition yet evading review exception to the mootness

[1] Because I would conclude that the present case is moot, I would not address the merits of the defendant's appeal.

doctrine. As the majority explains, in order for a moot appeal to qualify for review, it must meet three requirements: "First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, [the appeal] must be dismissed as moot." (Internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 747, 830 A.2d 711 (2003); see part I of the majority opinion. The majority concludes that the first requirement of the exception, namely, that the challenged action must be of an inherently limited duration, is satisfied because "there is a strong likelihood that, as compared to the time necessary to conclude appellate litigation, a substantial majority of cases raising a challenge to a pendente lite order entered in the course of dissolution proceedings will become moot prior to final appellate resolution." I disagree.

This court previously has interpreted the first element of this particular mootness exception to require that the challenged action be of an "inherently limited duration"; *Tappin* v. *Homecomings Financial Network, Inc.*, supra, 265 Conn. 763 (*Zarella, J.*, concurring in part and dissenting in part); or involve "functionally insurmountable time constraints"; *Loisel* v. *Rowe*, 233 Conn. 370, 383, 660 A.2d 323 (1995); or "an intrinsically limited lifespan." Id. This case simply does not fit within these narrow requirements. Although, in the present case,

the final dissolution order was entered prior to our consideration of the merits of the defendant's appeal, I do not agree that "a substantial majority of cases" that raise the particular issue that the defendant raises in this appeal will become moot prior to the conclusion of appellate proceedings. In the present case, the parties' agreement as to the terms of the dissolution of their marriage, including those relating to the custody of their child, led to the entry of the final dissolution order before this court could determine whether the Appellate Court properly concluded that a pendente lite order regarding the religious and educational upbringing of the parties' child constitutes a final judgment. This case, however, is not representative of the majority of dissolution cases, especially considering the protracted nature of highly contested dissolution proceedings that involve disputes over the custody of children.[2]

Indeed, in a case on which the majority relies heavily in part II of its opinion, in which the majority addresses

---

[2] The majority notes that I fail to address "the virtual certainty that the *effect* of this type of pendente lite order is of such limited duration that the question inevitably will evade review." (Emphasis in original.) Footnote 6 of the majority opinion. Specifically, the majority concludes that, "given the nature of the school calendar year and the unlikelihood that a trial court would issue a stay of a pendente lite order regarding a minor child's educational institution, if an aggrieved parent in the defendant's position wishes to avoid entirely the minor child's exposure to religious influences or to an inferior academic setting, it is hard to conceive of a scenario in which a challenge to such an order may be resolved through appellate proceedings prior to that exposure taking place." Id.

In my view, it is hard to conceive of any situation in which appellate proceedings would conclude prior to such exposure. Appellate proceedings, including a full briefing schedule and oral argument, occur over a longer period of time than the period of time that a child is not in school during a calendar year. Thus, even if it assumed that the challenge to an order *regarding the child's education would become moot on the child's first day of school*—a point I do not concede—the appellate proceedings likely would not have concluded prior to that point anyway. Thus, the majority's point regarding the effect of these types of orders lacks merit when considered in the context of the practicalities of civil appellate litigation.

the merits of the defendant's appeal, the parties to the custody dispute had not yet reached a final decision before the appeal regarding the temporary custody order made its way through the Appellate Court and this court. See *Madigan* v. *Madigan*, 224 Conn. 749, 750–52, 620 A.2d 1276 (1993). Specifically, in *Madigan*, the plaintiff filed a dissolution action on August 27, 1991. Id., 751. During the pendency of the dissolution proceedings, both parties sought temporary custody and visitation orders with respect to two of the parties' three children. See id. After a hearing, the trial court temporarily ordered joint custody, but also temporarily ordered that the children reside primarily with the defendant. Id., 752. The plaintiff thereafter appealed from the trial court's temporary custody order. Id. As in the present case, the Appellate Court in *Madigan* dismissed the appeal for lack of a final judgment. Id. We reversed the judgment of the Appellate Court in *Madigan*, however, concluding that "temporary custody orders are immediately appealable because an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected." Id., 757.

As it relates to this case, the holding in *Madigan* is important for the practicalities that it implies. The court's holding in *Madigan* that the period between the entry of a temporary custody order and the entry of a final dissolution order is so lengthy that the temporary order must be treated as a final judgment necessarily implies that the issue before us in the present case, namely, whether a pendente lite order relating to the religious and educational upbringing of a child is appealable, will arise again in a case that will not be moot. Indeed, the fact that the dissolution proceedings in *Madigan* had not yet concluded prior to the close of appellate litigation confirms my belief that this case

does not satisfy the narrow requirements of the capable of repetition yet evading review exception to the mootness doctrine. Rather, this case presents a challenge to an "action [that] can be reviewed the next time it arises, when it will present an ongoing live controversy." *Loisel* v. *Rowe*, supra, 233 Conn. 384.

Moreover, the majority's justification for concluding that this case falls within the capable of repetition yet evading review exception is inconsistent with its conclusion regarding the merits of the defendant's appeal. See part II of the majority opinion. Specifically, in concluding that a pendente lite order, such as the one at issue in the present case, constitutes a final judgment, the majority notes that, "such a pendente lite order may impact [a parent's right to make decisions regarding the religious and educational upbringing of his or her child] *over a significant period of time,* with the harm to the parental interest increasing exponentially as the . . . child spends more time in the educational institution at issue." (Emphasis added.) Furthermore, in *Madigan*, upon which the majority relies, this court explained that "[a] contested custody case is often lengthy . . . . To deny immediate relief to an aggrieved parent interferes with the parent's custodial right over a *significant period* in a manner that cannot be redressed by a later appeal." (Emphasis added.) *Madigan* v. *Madigan*, supra, 224 Conn. 756.

I believe it is inconsistent for the majority to conclude, on the one hand, that the period of time between the entry of a pendente lite order and the entry of a final dissolution order is so short that a substantial majority of cases are bound to become moot before appellate proceedings can be concluded, and to conclude, on the other hand, that the identical period of time is so lengthy—and, therefore, that the potential injury to the appealing parent's rights is so substantial— that the treatment of an otherwise interlocutory order

as a final judgment for purposes of an appeal is justified. I therefore would conclude that the present case is moot and that it does not fall within the capable of repetition yet evading review exception. Accordingly, I respectfully dissent.